Vanessa B. **BRASWELL**, as Guardian of Jason Ray Braswell, Plaintiff

v.

**INVACARE CORPORATION**, Invacare Continuing Care, Inc., The Medical Store, Inc., and John Doe 1 through 50 Defendants, Defendants.

Civil Action No. 4:09CV86TSL–LRA.

United States District Court, S.D. Mississippi, Eastern Division.

Oct. 21, 2010.

Stephen Paul Wilson, Joe Clay Hamilton, The Hamilton Law Firm, Meridian, MS, Robert Kevin Hamilton, The Hamilton Law Firm, Jackson, MS, for Plaintiff.

Neville H. Boschert, Watkins Ludlam Winter & Stennis, P.A., Jackson, MS, for Defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiff Vanessa B. Braswell has filed in this cause what she denominates a second motion to remand and to amend, which she purports to bring pursuant to Federal Rule of Civil Procedure 60. Defendant Invacare Corporation has responded in opposition to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes that plaintiff's motion should be denied.

Plaintiff Vanessa Braswell, on behalf of her son Jason Ray Braswell, filed this lawsuit in the Circuit Court of Clarke County, Mississippi, seeking to recover damages on account of injuries allegedly sustained by Jason when the handle grips of the wheelchair in which he was seated became detached, causing the wheelchair to roll backward off a porch and causing Jason to fall approximately six feet to the ground. Plaintiff sued the wheelchair manufacturer, Invacare, and a local (nondiverse) company, The Medical Store, Inc., from which she alleged she purchased the subject wheelchair. Invacare removed the case pursuant to 28 U.S.C. § 1446 on the basis of diversity jurisdiction, 28 U.S.C. § 1332, contending that The Medical Store was fraudulently joined to defeat federal jurisdiction. Specifically, Invacare contended that The Medical Store was an "innocent seller" or "mere conduit" of the wheelchair and therefore, under Mississippi Code Annotated § 11–1–63(h),[1] could not be held liable for an allegedly defective product.

In response to the motion, plaintiff acknowledged that The Medical Store could not be liable if it merely sold the wheelchair, but she claimed that The Medical Store may have altered or modified the

---

1. Mississippi Code Annotated § 11–1–63(h) provides: In any action alleging that a product is defective pursuant to paragraph (a) of this section, the seller of a product other than the manufacturer shall not be liable unless the seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; or the seller altered or modi-fied the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought; or the seller had actual or constructive knowledge of the defective condition of the product at the time he supplied the product. It is the intent of this section to immunize innocent sellers who are not actively negligent, but instead are mere conduits of a product.

wheelchair by failing to furnish her with warnings from the manufacturer concerning the risk of handle-grip detachment. Plaintiff noted that she had alleged in her complaint that at the time it delivered the wheelchair, The Medical Store did not provide her with any literature that may have accompanied the wheelchair when it was shipped to The Medical Store by Invacare. She maintained that, "[i]f in fact there were warnings regarding grip handle detachment contained in the manufacturer's literature," then The Medical Store could not be an "innocent seller," since by failing to include the warnings with the wheelchair when it was delivered to plaintiff, The Medical Store effectively altered the product and this alteration was a substantial factor in causing the accident and resulting injuries.

At her request, plaintiff was allowed time for discovery relating to whether the literature from Invacare that originally accompanied the wheelchair included any warnings relating to the risk of handle-grip detachment. Following such discovery, plaintiff filed a supplemental motion to remand, in which she took the position that the owner's manual for the wheelchair did implicitly warn of the risk of handle grip detachment. By memorandum opinion and order dated November 5, 2009, 2009 WL 3735986, the court rejected plaintiff's contention that the owner's manual impliedly warned of the danger of handle-grip detachment and concluded that since the evidence established that defendants did not otherwise alter or modify wheelchairs, plaintiff had not alleged a viable claim against The Medical Store and ordered that The Medical Store be dismissed.

Two months later, plaintiff moved for leave to amend her complaint to "better set forth the events that transpired," since her complaint, as originally pled, "inarticulately describe[d] the occurrence that forms the basis of this lawsuit due to [her] counsel's misapprehension...." Like her original complaint, plaintiff's proposed amended complaint recited that she had purchased the wheelchair from The Medical Store; however, she did not name The Medical Store as a defendant in her proposed second amended complaint. After Invacare responded that it had no objection to plaintiff's motion to amend, the motion was granted and on February 8, 2010, plaintiff filed her first amended complaint.

Thereafter, in the course of discovery, two employees of The Medical Store, Johnny Palmer and Robert Wilkerson, who had previously given their affidavits in response to the motion to remand, were deposed. Palmer testified that plaintiff did not purchase the subject wheelchair but rather leased the wheelchair from The Medical Store. Further, while both employees continued to maintain that they did not *alter or modify* any wheelchair, including the subject wheelchair, they did testify that in the course of business, they occasionally tightened wheelchair arm rests that had become loose (from age and/or wear) and replaced arm rests that had become scuffed and/or worn from use.[2]

Plaintiff points out that in their response to her original motion to remand, both The Medical Store and Invacare represented to her and to the court that The Medical Store was an "innocent *seller*." She states that it now appears from Palmer's testimony that, in fact, The Medical Store did not sell the subject wheelchair at all but instead merely leased to her a defective

2. However, neither was aware of having performed any such maintenance on the Inva- care wheelchair involved in this lawsuit.

product. She contends that for this reason, The Medical Store cannot claim the immunity which the products liability statute affords an "innocent *seller.*" Plaintiff submits, moreover, that the evidence now establishes that The Medical Store, through its employees, knew that the arm rests on Invacare (and other) wheelchairs could become loose and detach and yet had no policy to warn of this danger, so that even if The Medical Store were a "seller," it could not claim the immunity afforded an "innocent seller" since the statute does not immunize a seller if the seller had knowledge of a dangerous condition and failed to warn about it.

To properly address plaintiff's motion, it is essential to first identify precisely what relief plaintiff is seeking by her motion. Plaintiff purports to seek to amend her complaint to "add" The Medical Store as a defendant. The problem with this, however, as Invacare is quick to point out in its response, is that as a result of plaintiff's filing her amended complaint dropping The Medical Store as a defendant, plaintiff's claims against The Medical Store became, and presently remain barred by the statute of limitations, as is clear from the following.

■ The accident giving rise to plaintiff's claims herein occurred May 11, 2006. Plaintiff's original complaint was filed in the Circuit Court of Clarke County, Mississippi on May 8, 2009, three days before the statute of limitations would have expired. *See* Miss. Code Ann. § 15–1–49 (establishing three-year limitations period). Upon the filing of plaintiff's complaint, the statute of limitations was tolled, *see Owens v. Mai,* 891 So.2d 220, 223 (Miss.2005) ("Ordinarily, when a complaint is filed and properly served, that complaint tolls the running of the statute of limitations."); and even after this court ordered that The Medical Store be dismissed, the statute of limitation remained tolled as to plaintiff's putative claims against The Medical Store since the court never finally dismissed The Medical Store from the case, *see Marshall v. Kansas City Southern Ry. Co.,* 378 F.3d 495 (5th Cir.2004) (recognizing that train crew member defendants which district court ordered dismissed as having been fraudulently joined remained in case where district court did not enter a final judgment pursuant to Rule 54(b) in favor of the dismissed train crew defendants). And, since the court never entered a final judgment in favor of The Medical Store under Rule 54(b), the court's order of dismissal remained interlocutory, and thus could have been modified or rescinded at any time before final judgment was entered. *See* Fed. Rule Civ. Proc. 54(b) (Absent "entry of a final judgment as to one or more but fewer than all of the claims or parties," "any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."); *see also Lindsey v. Dayton–Hudson Corp.,* 592 F.2d 1118, 1121 (10th Cir.1979) ("Until the final decree the court always retains jurisdiction to modify or rescind a prior interlocutory order."); *Borskey v. American Pad & Textile Co.,* 296 F.2d 894 (5th Cir.1961) (noting that a district court retains jurisdiction over a case after a decision which is merely interlocutory and thus can reexamine its initial decision until final judgment).

However, that changed when plaintiff filed her motion to amend and then filed her amended complaint dropping The Medical Store as defendant. Plaintiff is

thus appropriately considered to have voluntarily dismissed The Medical Store in accordance with Federal Rule of Civil Procedure Rule 41(a)(2). *See Dee–K Enterprises, Inc. v. Heveafil Sdn. Bhd.*, 177 F.R.D. 351, 355 (E.D.Va.1998) ("An amendment pursuant to Rule 15 that eliminates (or proposes to eliminate) all causes of action against a particular defendant is the same as a motion to dismiss under Rule 41(a)(2) as to that defendant."); *see also AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir.1997) (finding that "plaintiffs' request to amend their complaint under Rule 15 [should be treated] as a motion for voluntary dismissal governed by Rule 41(a)(2)"); *Dzwonkowski v. Dzwonkowski*, Civil Action No. 05–0544–KD–C, 2008 WL 2163916, *12 (S.D.Ala. May 16, 2008) (stating that "when a plaintiff 'seeks the equivalent of a voluntary dismissal through some other procedural device, the court may treat the application as if made under Rule 41(a)(2)' ") (quoting 8 *Moore's Federal Practice* § 41.40[4][a] ).

The effect of a voluntary dismissal without prejudice is to put the plaintiff in the same legal position in which she would have been had she never brought the suit, *Taylor v. Bunge Corp.*, 775 F.2d 617, 619 (5th Cir.1985) (citing *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir. 1976)), which means that the limitations period is "not tolled by the bringing of an action that is later voluntarily dismissed." *Id.*[3] Consequently, in the current posture of the case, plaintiff cannot "add" The Medical Store as a defendant since the statute of limitations has run on her claim.[4] Instead, in order to be able to attempt to assert a *timely* claim against The Medical Store at this time, plaintiff must secure relief from her own voluntary dismissal of The Medical Store.[5]

Rule 60(b) of the Federal Rules of Civil Procedure states, in relevant part, as follows:

On motion or upon just terms, the Court may relieve a party or its legal repre-

3. In the court's view, this is the proper analysis, as dictated by applicable Fifth Circuit authority, *see Taylor v. Bunge Corp.*, 775 F.2d 617, 619 (5th Cir.1985). But even if the limitations period could be considered to have been tolled while the suit was pending notwithstanding plaintiff's voluntary dismissal of The Medical Store, any possible tolling would have ceased when she filed her amended complaint dropping The Medical Store as a defendant, and the limitations period would have expired three days later, since plaintiff's suit was filed three days before the statute of limitations would have expired. *See Gray v. Mariner Health Cent., Inc.*, Civil Action No. 3:05CV127–P–A, 2006 WL 2632211, *2 (N.D.Miss. Sept. 13, 2006) (finding *Taylor* inapposite, and concluding that the filing of a complaint tolls the statute of limitations period even where the case is ultimately voluntarily dismissed).

4. The court does note that Mississippi Code Annotated (15–1–69 generally provides a one-year savings period for refiling actions which have been abated, avoided, or defeated for

reasons of form, such as lack of jurisdiction). *See Lowry v. International Broth. of Boilermakers, Iron Ship Builders and Helpers of America*, 220 F.2d 546 (5th Cir.1955). However, that statute has no applicability here, in view of plaintiff's voluntary dismissal of The Medical Store for reasons other than form. *See Crawford v. Morris Transp., Inc.*, 990 So.2d 162, 171 (Miss.2008) (stating that "the general rule is that a party who files a voluntary motion for dismissal may not subsequently invoke the protections of the savings statute").

5. Plaintiff acknowledges she is unsure whether the court's order directing dismissal of The Medical Store remains capable of being modified or rescinded, but she asks that the court grant her such relief if it can be done. Alternatively, plaintiff states that if her motion to amend which sought to drop The Medical Store is viewed as a request for voluntary dismissal of The Medical Store, then the court's order allowing her amendment would be an interlocutory order, which she requests be rescinded under Rule 60.

sentative from a final judgment, order, or proceeding for the following reasons: (1) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

. . .

(3) fraud (whether previously called extrinsic or intrinsic) misrepresentation, or misconduct by an opposing party;

. . .

(6) any other reason that justifies relief.

■ Plaintiff submits that she is entitled to relief under the rule on the basis that misrepresentations by defendants led to the court's decision that no claim had been stated against The Medical Store, which, in turn, led to plaintiff's decision to drop The Medical Store as a defendant rather than amending her complaint to state viable claims against that defendant. Specifically, plaintiff contends both defendants misrepresented to her and to the court that The Medical Store was an "innocent *seller*" under Mississippi Code Annotated § 11–1–63, when, in fact, it was not a *seller* at all. She contends that the court obviously relied on this misrepresentation in concluding that plaintiff had not stated a cognizable claim against The Medical Store, and that she also relied on this misrepresentation in not seeking to amend the complaint, or filing a separate complaint, to allege a cause of action against The Medical Store for leasing her a defective wheelchair. Plaintiff additionally asserts that the representations of The Medical Store employees in their affidavits regarding their lack of knowledge of any potential danger of the handle grips were also false, and that she also relied on these misrepresentations in choosing not to pursue claims against The Medical Store. Plaintiff contends further that the facts that The Medical Store was a lessor, not a seller, of the wheelchair, and that

employees of The Medical Store at times performed maintenance on leased wheelchairs involving the handle grips constitute "newly discovered evidence" that she could not have timely discovered in the exercise of reasonable diligence. Plaintiff thus urges the court to grant her relief since she acted in reliance on the false assertions in the affidavits of the Medical Store employees. The court concludes that relief is not warranted.

The court fails to perceive any legitimate basis for plaintiffs insistence that she was duped into believing she had purchased the wheelchair by the "innocent *seller*" arguments of Invacare and The Medical Store in opposition to her motion to remand or for her claim that she could not have discovered this evidence in the exercise of reasonable diligence. It was plaintiff who alleged in her complaint that she had purchased the subject Invacare wheelchair from The Medical Store. In their affidavits, Medical Store employees Wilkerson and Palmer did not specifically address whether the wheelchair was purchased or leased; they simply stated that they never altered or modified any wheelchairs. Counsel for both defendants did argue that The Medical Store was an "innocent *seller*." But they did so in response to plaintiff's own allegation that she had purchased the wheelchair. Certainly there is nothing to suggest that defendants undertook to mislead plaintiff. And even if they had, the record belies plaintiff's suggestion that she could not have ascertained the true facts in a timely manner.

Plaintiff asserts that The Medical Store knew or, in the exercise of due diligence, should have known that the representation that it had sold the subject wheelchair was false. Yet plaintiff plainly should have been able to ascertain this, as well. According to the deposition testimony of Robert Wilkerson, during the time

period when the equipment was delivered to plaintiff, The Medical Store typically would lease medical equipment to its customers/patients, and after ten months of a continuous lease, The Medical Store would send a letter to the customer/patient advising she could either purchase the equipment or could continue leasing the equipment. Plaintiff herein claims she was unaware she was merely leasing the wheelchair since she never signed a lease agreement and also since she never received any notification that she could either purchase the wheelchair "or continue to lease it." However, as Wilkerson explained in his deposition, the lease arrangement would have been handled through Medicare, and plaintiff would have been provided an Explanation of Benefits relating to the lease of the wheelchair. Thus, the fact that plaintiff may not have received the typical correspondence from The Medical Store asking whether she wished *to continue leasing* the wheelchair is of no moment. The plain fact is, plaintiff could have determined before filing suit that she had only leased the wheelchair and that The Medical Store thus was not a "seller," as she incorrectly alleged. Had she done so, and correctly alleged that she had leased the wheelchair from The Medical Store, then the result on the motion to remand may well have been different. Plaintiff is not entitled to relief which she could have avoided by her own diligence.

Moreover, it was plaintiff's decision to drop The Medical Store from the case which caused any potential claim against that defendant to become time barred. That she, or her attorney, may not have fully considered the potential consequences of the decision to so proceed is no basis for relief under Rule 60(b). *See Nemaizer v. Baker,* 793 F.2d 58, 62 (2d Cir.1986) (refusing to grant relief from stipulation of dismissal with prejudice which precluded plaintiff from filing subsequent suit in state court, and noting that "an attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment" under Rule 60(b)(1) or 60(b)(6)); *Shackleton v. Food Mach. & Chem. Corp.,* 248 F.2d 854 (7th Cir.1957) (holding that district court did not abuse its discretion when it refused to vacate its order granting plaintiff's motion to voluntarily dismiss defendant from suit); *In re Mercado–Jimenez,* 193 B.R. 112 (D.P.R.1996) (concluding that bankruptcy court did not abuse its discretion in denying debtor's motion to withdraw its earlier motion for voluntary dismissal which the bankruptcy court had already granted); *DeLong's, Inc. v. Stupp Bros. Bridge & Iron Co.,* 40 F.R.D. 127 (E.D.Mo.1965) (denying plaintiff's Rule 60(b)(6) motion to reinstate two defendants it voluntarily dismissed in order to obtain an earlier trial date).

For all of the foregoing reasons, it is ordered that plaintiff's motion to amend and to remand is denied.